The bill of complaint sought the foreclosure of a mortgage for $7,000, dated December 29th, 1922, executed by the defendants William Baader and Elizabeth, his wife, and given by them to the complainant. It covered premises known as No. 688 Park avenue, West New York, New Jersey. The mortgagors conveyed the premises to the defendants Asril Blacker and Ida, his wife, subject to complainant's mortgage. Shortly before the due date of the mortgage, the Blackers requested the complainant to extend the time of payment of the principal for a further period of three years from January 1st, 1926, which extension was granted on October 26th, 1925. On December 13th, 1928, at the request of the Blackers, she again agreed to extend the due date of the mortgage for another three-year period, beginning January 1st, 1929. The mortgage being in default on the final due date, suit was instituted. No defense was entered to it and a decree proconfesso was filed against all the defendants. Subsequently, on April 2d 1935, a final decree was entered for $7,548.32 for principal and interest, and $310.47 for taxed costs. Under the final decree a writ of fieri facias was issued and directed to the sheriff of Hudson county, for the sale of the premises. The sale was duly advertised and set for June 27th, 1935. Three days prior to the advertised date of sale, the defendants William and Elizabeth Baader filed a petition and affidavits in the cause by which they sought to reopen the decree; a restraint against the sheriff's sale; and permission to file an answer and counter-claim.
An order to show cause, with an ad interim restraint against the sale, consequently, was issued. The Baaders, in their petition and affidavits, alleged that on June 20th, 1935, for the first time, they learned of the extension agreements between the complainant and the defendants Asril and Ida Blacker; and that by reason of those extensions, they were, or in equity should be, released of and from all obligation under their bond which accompanied the mortgage.
After the argument under the order to show cause, an order dated July 9th, 1935, was made, lifting the restraint *Page 37 
and permitting the defendants William and Elizabeth Baader to file an answer and counter-claim. Thereafter, on July 11th, 1935, the sheriff sold the premises for the sum of $500 plus the existing municipal liens which amounted to approximately $1,000. William and Elizabeth Baader filed objections to the confirmation of the sale. The objections were subsequently argued, and upon the conclusion thereof, an order, dated September 3d 1935, confirming the sale was filed.
Later, an answer and counter-claim was filed by the Baaders. Their answer admits the material allegations of the bill. The counter-claim sets up the conveyance of the mortgaged premises by the Baaders to the Blackers subject to complainant's mortgage, and alleges the extension agreements made by the complainant with the Blackers were without their knowledge or consent; by reason of which they claim exoneration from all liability under their bond. The counter-claim, in addition, asks for a credit of the fair market value of the premises against any deficiency. Complainant's answer to the counter-claim alleges that the extension agreements were made with the knowledge and consent of the Baaders; and denies that complainant had any knowledge of the assumption of her mortgage by the Blackers.
There was no evidence to show that complainant had any knowledge of the assumption of her mortgage by the Baader's grantees — the Blackers. The defendants' witnesses presented evidence to show that the amount of complainant's mortgage was deducted from the purchase price. In such a situation, equity imposes upon the conscience of the grantees an obligation to indemnify the grantor in the event he becomes liable, notwithstanding the premises were conveyed subject to the mortgage. Tichenor v. Dodd, 4 N.J. Eq. 454; Heid v.Vreeland, 30 N.J. Eq. 591; Torrey v. Thayer, 37 N.J. Law 339;Friedman v. Zuckerman, 104 N.J. Eq. 322; Reeves v. Cordes,108 N.J. Eq. 469; Dieckman v. Walser, 114 N.J. Eq. 382; FiedlerCorp. v. Peak Realty Co., Ibid. 535.
The fact that a subsequent recorded deed of conveyance contains an assumption clause of a mortgage is not presumptive *Page 38 
or constructive notice of the assumption to the mortgagee. Mann
v. Bugbee, 113 N.J. Eq. 434. The complainant's testimony indicated that she was without knowledge of the details of the transactions between the Blackers and the Baaders — relating to the conveyance of the property — beyond her admission that she had been told by William Baader that he had "sold the property but that he would still look out for her interests."
The facts in the instant case are not unlike those which appear in DeLotto v. Zipper, 116 N.J. Eq. 344, wherein Vice-Chancellor Lewis, in part, said:
"* * * In the instant suit, although the deed from the complainants to Mrs. Hubschmidt contains no express assumption of the mortgage, there is some evidence which indicates that the amount of the mortgage was deducted from the purchase price and therefore there might have been an equitable assumption. However, the complainants have not proven to my satisfaction the other necessary element in order to obtain the relief they seek. The evidence presented does not satisfy me that Mylius received the necessary notice that Mrs. Hubschmidt assumed the mortgage indebtedness. The testimony of Mrs. Hubschmidt's husband that just previous to the purchase of the premises he so notified Mr. Mylius is not sufficient to convince the court on this point, in the face of the testimony of Mr. Mylius that no such notice was given.
"In the absence of this necessary element, the relief prayed for must be denied, and a decree will be advised accordingly."
An original obligor to be released from liability under a mortgage bond when the mortgagee extends the time of payment by agreement with the owner or grantee of the premises, must show (1) that there was either an express or implied assumption of the mortgage by the grantee; (2) the mortgagee had notice or knowledge of that assumption; and (3) the extension had been entered into without the assent of the original mortgagor. These three elements must be established; and if one be absent, the original mortgagor is not discharged from his obligation under the bond.
In the case of Delacroix v. Stanley, 113 N.J. Eq. 121, *Page 39 
Vice-Chancellor Stein decided against the mortgagee because the three elements last enunciated did not exist. Datz v. Barry,115 N.J. Eq. 84.
The complainant over a course of years had loaned money on bond and mortgages. The placing of her loans she entrusted to the defendant William Baader and to his father, Mattaeus Baader (with whom William had been associated) from about the year 1916. They made recommendations to her as to the amount, and the place where her money should be loaned upon mortgages; they appraised the value of the property upon which the mortgage was to be placed; they negotiated with mortgagors at various times for extension agreements; and they collected the interest on the mortgages which she held. She relied implicitly upon their representations; she had confidence in their honesty and good faith. She testified, as heretofore observed, that she knew nothing about the details of the conveyance from the Baaders to the Blackers, excepting that she was told there had been a sale of the mortgaged premises. That at the time the Blackers sought from her the extension agreement which she granted on October 26th, 1925, she first discussed it with William Baader. He advised her that the grantees had paid the taxes which had become due; and that they had regularly met their interest and installment on a second mortgage on the premises which was held by him. He advised her to grant the extension. She further testified that before consenting to the second extension on December 13th, 1928, she again discussed the granting of it with William Baader; and he again advised her that the grantees had met their obligations and were up to date on the payments on the second mortgage, and that she could "go another three years." That testimony of the complainant, Baader disputed. He denied that he had any knowledge of the extensions. But his witness, Asril Blacker, testified that before consulting the complainant about the extensions, he first spoke to Baader about them, and that Baader told him to talk to the complainant about the matter.
Vice-Chancellor Lewis clearly stated the law in Reeves v.Cordes, supra, when he said (at p. 472): *Page 40 
"* * * Our courts and the great weight of authority hold that if the mortgagee, with notice or knowledge of the conveyance and assumption by the grantee of the mortgage debt, extends the time of payment of the mortgage by a valid agreement between him and the grantee, such extension agreement, ipso facto, operates to discharge the original mortgagor, unless same has been assented to by the latter."
The Baaders, William and his wife, held a $4,500 second mortgage on the property covered by complainant's mortgage, which, according to Blacker's testimony, was paid in full on January 4th, 1929. That second mortgage was canceled of record January 7th, 1929.
In the course of Baader's examination, he admitted that he had sworn falsely, in three instances, to affidavits filed by him in this cause. That admission brings discredit on his testimony. InRiehl v. Riehl, 101 N.J. Eq. 15, Chancellor Walker, among other things, said:
"The Chancellor, as the trier of the facts of a case before him, is the judge of the credibility of the witnesses, and, like a jury, does not have to believe a particular witness; a witness is not entitled to credit whose testimony is inconsistent with the common principles by which the conduct of mankind is naturally governed, and the court may disbelieve a witness whenever there is reason therefor."
The evidence justifies the inference that William Baader was the agent of the complainant in the mortgage transaction; and as such agent he, by his acts, assented to the extension agreements. I am satisfied the defendant William Baader advised the complainant to grant the extensions and that she accordingly followed his advice. Reeves v. Cordes, supra. I think the complainant has honestly related the facts in this case. Her story was told in an unhesitating, straightforward and convincing manner.
The Baaders contend they are entitled to a credit of the fair value of the mortgaged premises. To sustain that claim it was incumbent upon them to show affirmatively (1) that the premises were sold at an unconscionable figure; or (2) at a nominal bid plus the absence of competitive bidding due *Page 41 
to some fact beyond their control; and (3) the existence of an emergency because of which the defendants were unable to protect themselves by refinancing or otherwise; and (4) their own inability — lack of financial resources — to protect themselves at the sale. Young v. Weber, 117 N.J. Eq. 242; FederalTitle and Mortgage Guaranty Co. v. Lowenstein, 113 N.J. Eq. 200;Maher v. Usbe Building and Loan Association, 116 N.J. Eq. 475.
The defendant William Baader in the course of his testimony said that, in addition to owning his home in North Bergen, New Jersey, he, also, owns three apartment houses in Union City, New Jersey; and that he holds a mortgage for $20,000. In an affidavit filed by the Baaders in this cause, they stated they conferred with complainant and offered to pay her $1,000 in cash for an unconditional release from any or all liability under their bond.
Vice-Chancellor Berry in Young v. Weber, supra, said:
"* * * Emergencies such as arose in the Lowenstein Case are essential to invoke the equities there stated. Those equities are well founded in principle, but may be invoked only by the distressed. The disappointed but affluent mortgagor may not take advantage of a rule designed to relieve distress during an emergency to avoid payment of his debt and unload his unprofitable land upon an unwilling mortgagee who is as much entitled to the protection of the court as is the mortgagor."
The evidence satisfies me that the Baaders could have protected themselves at the sale. They were not without cash or security; they were possessed of assets that could have amply protected them against loss. The evidence shows that the complainant offered to refinance the property for the Baaders; but the Baaders did not accept the offer.
It appears by the sworn petition of William Baader, filed herein, that he had been engaged in the real estate business for fifteen years, and that he had made appraisals, and was familiar with real estate values in all of North Bergen. He also recited therein, he offered complainant $1,000 for a release. But at the hearing, his testimony was to the opposite *Page 42 
effect. He said that he was not engaged in the real estate business; that he never had been; that he never had appraised real estate and knew nothing of real estate values; and that he never had made complainant an offer of settlement. He admitted that he had sworn falsely to the affidavit. The affidavit attached to his petition was the same upon which Vice-Chancellor Fielder relied when he advised the order of July 9th, 1935, permitting the defendants William and Elizabeth to file their answer and counter-claim. In the face of such conflicting statement from the same witness, the court's duty under the circumstances is to completely ignore it, since such testimony is without probative force. Where a party in litigation knowingly makes false statements as a basis for relief, he should be denied relief. Riehl v. Riehl, supra; Clickner v. Clickner, 95 N.J. Eq. 479; Gluck v. Rynda Development Co., 99 N.J. Eq. 788;affirmed, 100 N.J. Eq. 554; Pfender v. Pfender, 104 N.J. Eq. 107; affirmed, 105 N.J. Eq. 247; Zearfoss v. Zearfoss, 112 N.J. Eq. 530.
William Baader, in these proceedings, seems to have entirely overlooked the equitable maxim co-existent with the establishment of equitable jurisdiction that "he who comes into equity, must come with clean hands" and keep them clean throughout the entire proceedings. Newark Cleaning and Dye Works, Inc., v. Gross,102 N.J. Eq. 362; Clickner v. Clickner, supra; Kem ProductsCo. v. Levin, 117 N.J. Eq. 560.
I shall advise an order denying the relief sought under the petition, and a dismissal of the counter-claim. *Page 43