The bill alleges that one Stamatios K. Kefalianos, being the owner of certain lands in Cape May county, executed to complainant his bond in the sum of $12,000, and for the purpose of securing the payment thereof executed a mortgage upon said land and premises, which mortgage was duly recorded.
"On October 26th, 1925, the said Stamatios K. Kefalianos, by his deed of conveyance, bearing date the day and year last aforesaid and recorded in the said clerk's office on October 28th, 1925, in deed book 416, page 100, granted and conveyed the said mortgaged premises to Morris Zuckerman, Harry Kotok and Nathan Joseph, as tenants in common, the said Morris Zuckerman taking therein a one-half undivided interest; the said Harry Kotok, a one-quarter undivided interest, and the said Nathan Joseph, a one-quarter undivided interest. *Page 323 
"At the time of the said conveyance last above referred to, the said Morris Zuckerman, Harry Kotok and Nathan Joseph paid to the said Stamatios K. Kefalianos the sum of $19,000 as the purchase price, but retained therefrom the sum of $12,000, the amount of complainant's mortgage, with interest thereon up to the time of the settlement of the said property, which took place on October 26th, 1925.
"The said amount of said complainant's mortgage having been, so as aforesaid, retained from the purchase price by the said Morris Zuckerman, Harry Kotok and Nathan Joseph, the latter became and were bound to pay the same to complainant, if the mortgaged premises should not bring sufficient at a sale under the mortgage to pay the mortgage debt."
The mortgage, being in default, was foreclosed, and at the sheriff's sale the premises were sold for the sum of $100, a deficiency arising of over $12,500.
"Complainant avers that by reason of the fact that the said Stamatios K. Kefalianos having sold to the said Morris Zuckerman, Harry Kotok and Nathan Joseph the said premises for a certain sum, to wit, the sum of $19,000, and the said Morris Zuckerman, Harry Kotok and Nathan Joseph having, on the execution of the contract of purchase, deducted from such purchase price the amount of complainant's mortgage, and the land being conveyed subject to complainant's mortgage by the said Stamatios K. Kefalianos to the said Morris Zuckerman, Harry Kotok and Nathan Joseph are bound to pay to complainant the amount of his mortgage debt with interest as aforesaid, less $100, the proceeds of the sale as aforesaid."
The complainant prays:
"I. That Morris Zuckerman, Harry Kotok and Nathan Joseph, who are the defendants to this suit, may answer this bill, and each allegation therein made.
"II. That the said defendants be decreed to hold for the use and benefit of the complainant, the amount of complainant's mortgage, to wit, the sum of $12,000, with interest from November 14th, 1927, less the proceeds of said foreclosure sale. *Page 324 
"III. That this honorable court may decree that the said defendants be declared to be trustees for complainant for the moneys retained by them from the said purchase price under the said conveyance from Stamatios K. Kefalianos, above set forth.
"IV. That the said defendants may, by the decree of this honorable court, be required to pay to complainant the amount of his said mortgage with interest as aforesaid, less the proceeds of the said foreclosure sale."
The obligor of the bond, Kefalianos, is not made a defendant.
Motion is made for an order striking out the bill of complaint, upon the grounds: "1. That the facts set forth are insufficient to entitle complainant to the relief sought.
"It does not appear by averment in said bill of complaint that these defendants assumed and agreed to pay the debt secured by the mortgage held by complainant, and no personal liability on the part of these defendants to the complainant is set forth or shown. No liability was incurred by defendants in taking title subject to the mortgage held by complainant and no personal judgment can be enforced against them by reason of any deficiency which may have arisen upon the foreclosure of complainant's mortgage."
In Woodbury Heights Land Co. v. Loudenslager, 60 N.J. Eq. 403,
Mr. Justice Garrison, speaking for the court of errors and appeals, said, quoting Chancellor Haines in Tichenor v. Dodd,4 N.J. Eq. 454: "By the terms of the deed, the mortgage moneywas to be taken as a part of the consideration, and, hence, the proposition that under such circumstances equity raises upon the conscience of the purchaser an obligation to indemnify the mortgagor is correct. If he withhold the money till the premises are sold away from him, he has no ground of complaint if the mortgagor asks him to pay the amount remaining due." In Crowell
v. Hospital of Saint Barnabas, Mr. Justice Depue, speaking for the court of errors and appeals, summarized the authorities upon such stipulations as follows:
"1. In equity a stipulation of this kind is regarded as a contract to indemnify the grantor against the mortgage debt. *Page 325 
"2. The mortgage debt does not thereby become a personal debt of the grantee.
"3. The equity is operative between the parties to the deed only.
"4. If the purchaser buy the mere equity of redemption, he may discharge his equity to the mortgagor by releasing the lands.
"5. If by the terms of the purchase the mortgage debt is by agreement taken as part of the consideration money, equity raises upon the conscience of the purchaser an obligation to indemnify the mortgagor against the mortgage debt."
In other words, "the mortgage debt may by agreement, if so stated in the deed, be charged upon the unpaid purchase-money, which is a different thing from the legal assumption of the mortgage debt by the grantee."
This is not an action brought by the mortgagor praying to be indemnified against the mortgage debt as was Tichenor v. Dodd,supra, in which the chancellor discussed the question now raised.
The complainant cites Heid v. Vreeland, 30 N.J. Eq. 591, as sustaining his bill. An examination of the text of this case is convincing that the headnote is not entirely supported.
The vice-chancellor said: "Having accepted the land subject to the mortgage, and kept back enough of the vendor's money to pay it, it is only common honesty that he should be required either to pay the mortgage or stand primarily liable for it. His retention of the vendor's money for the payment of the mortgage imposes upon him the duty of protecting the vendor against themortgage debt." (Italics are mine.)
Should, however, it be that the language of the vice-chancellor could be construed to imply that the mortgagee could proceed primarily against the grantee, such statement has been overruled in Woodbury Heights Land Co. v. Loudenslager as above quoted.
An order to strike out the bill will be advised. *Page 326