Complainant Elmer W. Lang, then unmarried, executed a mortgage in the amount of $7,500, which later, by mesne assignments, became the property of the Slovak Catholic Sokol, Inc. Complainant Elmer W. Lang later married the other complainant, and on October 31st, 1936, they conveyed the mortgaged premises to the defendant by deed which made the premises expressly subject to the mortgage but contained no provision for assumption of the mortgage by the grantee. Subsequently, the mortgage was foreclosed and bid in by the Slovak Catholic Sokol, Inc., for the sum of $100. A suit for the deficiency was brought in 1940 against complainant Elmer W. Lang for the sum of $7,796.68. Complainants applied to defendant to pay the amount of this deficiency, and upon its refusal the present suit was brought. Since then and before final hearing, complainants settled with the Sokol for the sum of $2,500, and received from the Sokol a covenant not to sue. Defendant moved to strike the bill, *Page 383 
on which decision was reserved until final hearing. It is the contention of complainants that the transaction between them and defendant was such as to constitute in equity an assumption by the defendant of the mortgage debt. This contention is based upon the well settled equitable principle in this state that where the purchaser deducted or retained out of the purchase price, as fixed and agreed upon the amount of the mortgage debt, equity will raise or impose upon his conscience an obligation to indemnify his grantor, if the latter himself be personally liable for the payment of the mortgage debt, and this although the premises were conveyed subject to the mortgage. Heid v.Vreeland, 30 N.J. Eq. 591; Reeves v. Cordes, 108 N.J. Eq. 469;DeLotto v. Zipper, 116 N.J. Eq. 344.
In the late case of Meyers v. Siracusa, 125 N.J. Eq. 183,
it was held:
"Assuming the proofs meet the allegations, it seems to me to be well settled that where a purchaser of mortgaged premises had deducted or retained out of the purchase price, as fixed or agreed upon the amount of the mortgage debt, equity will then raise or impose upon his conscience an obligation to indemnify his grantor, if the latter himself be personally liable for the payment of the mortgage debt and this although the premises were conveyed subject to the mortgage."
Assuming that the nature of the transaction between the parties was such as to constitute in equity an assumption of the mortgage debt, I do not see any ground in equity on which the defendant can be held liable for more than the amount of the actual damages sustained by them, namely, the amount of $2,500, paid in settlement of the claim of the Sokol. The doctrine of implied assumption was developed and adopted in this court to prevent injustice and loss to a mortgagor who had parted with his property. In its application the vendor becomes the debtor and the vendor remains only as a surety, and it would be most inequitable to allow him to more than indemnify himself for his loss. In the instant suit, according to their contention, the complainants would receive the total amount of the deficiency, namely, the sum *Page 384 
of $7,800, whereas their actual loss was only $2,500, and they would, therefore, be receiving a clear profit of the difference. It seems clear that the doctrine of equitable assumption can be used only as a shield and not as a sword, so that at most the complainants could only recover the $2,500.
But, in my opinion, there was no equitable assumption and defendant, accordingly, is not liable even to reimburse complainants for the sum paid by them to the assignee of the mortgage. The parties entered into a formal contract of exchange, which sets forth that the defendant "agrees to grant and convey to the party of the first part at a valuation for the purpose of this contract of $7,500" in the premises in question. The contract expressly provided that the premises were to be conveyed subject to the mortgage held by the Sokol, which was stated to be the sum of $5,750. The contract also sets forth that "the difference between the values of the respective premises over and above encumbrances shall be deemed for the purpose of this contract to be $1,750" in favor of the defendant, which the complainants agreed to pay. There is also a provision that the defendant shall pay a sum in reduction of the mortgage on the property given by it in exchange. It clearly appears from this contract that this was not a sale of the premises owned by complainant at a price of $7,500, together with a sale by defendant to complainants of another parcel at a price of $17,000. These two figures are expressly set forth in the contract as being valuations for the purpose of the exchange of properties and, therefore, solely for the purpose of determining the debts and credits to be adjusted upon the conveyances. It is true that in the closing statement drawn up at the time of the exchange of deeds appear the expressions twice "Price $17,000.00" for one parcel, and "Price $7,500.00" as to the other. In view of the formal contract, the use of the expression "Price" on the sheet setting up the various debts and credits would not be controlling. Mr. Bowes, who conducted the negotiations for the exchange, testified that after various discussions it was agreed that complainants' equity should be considered as a cash payment against the purchase of the other house owned by defendant. These agreements were embodied in a formal *Page 385 
contract of exchange, and he further testified that the closing was in accordance with the terms of the contract.
In my opinion the figure of $7,500 was merely the figure agreed on as a basis of valuation for the exchange of properties, and did not constitute a sale at the price of $7,500, and, accordingly, there was no equitable assumption of the mortgage debt.
A decree will be advised dismissing the bill. *Page 386