The prayer of complainant's bill except that part which prays answer, is as follows:
"2. That the defendants, Harold L. Levin and Industrial Emulsions, Incorporated, may be enjoined and restrained from in any way utilizing directly or indirectly said secret processes, formulae and methods for the manufacture and compounding of complainant's products and utilizing the special information aforesaid, or publishing, divulging or making known or communicating the same, or any information with reference thereto, to any other person or persons whatever.
"3. That the defendants, Harold L. Levin and Industrial Emulsions, Incorporated, if said written memoranda have *Page 561 
been delivered to it, may be directed to destroy all copies of said secret processes, formulae and methods and special information aforesaid of any kind that may in any way aid or assist them, or either of them, or anyone, in the utilization of such secret processes, formulae and methods and information, or any improvements or modifications thereon.
"4. That the defendants, Harold L. Levin and Industrial Emulsions, Incorporated, a New Jersey corporation, if said information has been revealed to it, may be restrained and enjoined from ordering, purchasing or in any other way obtaining from the persons, firms or corporations manufacturing and compounding certain of complainant's products upon secret processes, formulae and methods furnished by complainant to them any of said products, or from in anywise endeavoring to order, purchase or obtain any of said products or any information relating thereto.
"5. That the defendants, Harold L. Levin and Industrial Emulsions, Incorporated, if said lists have been delivered to it, may be ordered to deliver up to the complainant to be destroyed the list of names and addresses of complainant's customers copied or extracted from complainant's records, and all copies or extracts of or from such lists now in his or its or their possession or under his, its or their control, and that the said defendants, or either of them, may be restrained and enjoined from making use of the information obtained by them, or either of them in the manner aforesaid."
Upon the filing of the bill an order to show cause was made with injunctive restraint as follows:
"And it is further ordered that in the meantime and until the further order of this court the said defendants, Harold L. Levin and Industrial Emulsions, Incorporated, its officers, directors, agents, servants and all persons acting on its behalf, be and they are hereby restrained and enjoined from (1) in any way utilizing directly or indirectly the secret processes, formulae and methods for the manufacture and compounding of complainant's products and utilizing the special information mentioned in the bill of complaint herein or from publishing, divulging or making known or communicating the *Page 562 
same or any information with reference thereto to any other person or persons whatsoever; (2) ordering, purchasing or in any way obtaining from the persons, firms or corporations, manufacturing and compounding certain of complainant's products upon the secret processes, formulae and methods furnished by complainant to them any of said products or in anywise endeavoring to order, purchase or obtain any of said products or any information relating thereto; and (3) making use of information obtained by Harold L. Levin through the copying and extracting from complainant's records of the list of names and addresses of complainant's customers."
The hearing upon the order to show cause having been adjourned from time to time, complainant on or about November 30th, 1934, caused to be sent to the trade a letter reading as follows:
"Gentlemen:
This is to notify you that since November tenth, and at the present time, both HAROLD L. LEVIN and INDUSTRIAL EMULSIONS, INC., are under a temporary RESTRAINING ORDER of the CHANCERY COURT enjoining their use of any of our data and restrainingthem from soliciting business from our customers on competitiveproducts.
If you have done any business with or have been solicited by either HAROLD L. LEVIN or INDUSTRIAL EMULSIONS, INC., since November tenth, may we have the details by return mail?
We know you will co-operate with us to prevent violation of the order of the Court by a discharged employe. Thank you.
 Very truly yours, KEM PRODUCTS COMPANY, E.S. Genstein, (Italics mine.) President."
Upon the adjourned return day of the order to show cause, defendants' solicitor moved to dismiss the bill of complaint upon the ground that one who comes into a court of equity, must come with clean hands and keep them clean after his entry and until the final determination of the issue.
The court had not enjoined defendants "from soliciting business from our customers on competitive products," and, indeed, no such relief is prayed for in the complaint. The *Page 563 
injunction went to the use by defendants of complainant's alleged secrets, and the use of customers' lists, alleged to have been taken by defendant Levin from complainant's establishment, the existence of which secrets and lists are denied by defendants.
The action of complainant in sending its letter did defendants substantial injury, according to the affidavit of Harold L. Levin. On the argument, the sending of the letter was not denied. It was stated by counsel that the letter was sent only to certain customers whom complainant believed had been or were being approached by defendants. The number of letters sent is not material.
The court permitted the filing of the answer of defendants, and when filed, the answer was to be considered as used upon the hearing on the order to show cause. It has been filed. In paragraphs 16-19 of the answer, the defendants set up in lieu of plea, the subject-matter of the objection which the defendants made on the hearing of the order to show cause and the matter is now properly before the court.
It is well established that one who seeks relief in a court of equity must come with clean hands and keep them clean under the penalty of not being listened to by the court even if the complaint be well founded. Newark Cleaning and Dye Works v.Gross, 102 N.J. Eq. 362; Clickner v. Clickner, 95 N.J. Eq. 479.
The supreme court of errors of Connecticut, in Gest v. Gest
(1933), 117 Conn. 289; 167 Atl. Rep. 909, stated the general rule (at p. 913) thus:
"The application of the clean hands maxim does not depend upon an averment in pleadings or the claims of the parties: it mayand should be applied by the court of its volition when asituation calling for it is disclosed on the trial by evidence orotherwise. Dunham v. Presby, 120 Mass. 285, 289; Teoli v.Nardolillo, 23 R.I. 87, 93; 49 Atl. Rep. 489; Bentley v.Tibbals (C.C.A.), 223 Fed. Rep. 247, 252; Creamer v.Bivert, 214 Mo. 473, 485; 113 S.W. Rep. 1118; 21 C.J. 186."
(Italics mine.)
The unclean hands maxim does not repel all sinners from *Page 564 
courts of equity, nor does it apply to every unconscientious act or inequitable conduct. The inequity which deprives a suitor of a right to justice in a court of equity, is not general iniquitous conduct unconnected with the cause or ground of action, but it must be evil practice or wrong conduct in the particular matter or transaction in respect to which judicial protection or redress is sought. Neubeck v. Neubeck, 94 N.J. Eq. 167.
A misuse of the court's process or of an order of the court in a pending cause is such unclean conduct as bars relief.
Vice-Chancellor Berry in Gluck v. Rynda Development Co.,99 N.J. Eq. 788; affirmed, 100 N.J. Eq. 554, considering this subject said: "The conscience of the applicant for relief in this court is always open to the scrutiny of the chancellor. One of the most wholesome and beneficent principles of a court of equity finds voice in the maxim that `he who comes into equity must come with clean hands,' and this maxim means that, not only must one seeking equitable relief enter the portals of this court with clean hands, but he must keep them clean after his entry and until the final determination of the issue." The vice-chancellor there cited and quoted with great care from many authorities in this and other jurisdictions. He again considered the subject inPfender v. Pfender, 104 N.J. Eq. 107 (at p. 112);affirmed, 105 N.J. Eq. 247.
"It is not alone fraud or illegality which will prevent a suitor from entering a court of equity; any really unconscientious conduct, connected with the controversy to which he is a party, will repel him from the forum whose very foundation is good conscience." Pom. Eq. Jur. § 404.
A court of equity will not countenance inequity. The conduct of the complainant herein offends the dictates of natural justice. Whatever may be its rights and whatever use it may make of them in a court of law, it will be held remediless in a court of equity. A suit in equity is an appeal for relief to the moral sense of the chancellor.
The motion to dismiss the bill of complaint is granted. *Page 565